IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **WILLIAM SAKI**<br>c/o Speech Law, LLC<br>4403 Saint Clair Ave, Suite 400<br>Cleveland, OH 44103-1125<br><br>*and*<br><br>**JEFFREY WONSER**<br>c/o Speech Law, LLC<br>4403 Saint Clair Ave, Suite 400<br>Cleveland, OH 44103-1125<br><br>*and*<br><br>**PATRICK CORRIGAN**<br>c/o Speech Law, LLC<br>4403 Saint Clair Ave, Suite 400<br>Cleveland, OH 44103-1125<br><br>*Plaintiffs,*<br><br>v.<br><br>**CHARLES L. NORMAN**<br>1970 West Broad Street<br>Columbus, OH 43223<br><br>*and*<br><br>**ANDY WILSON**<br>77 South High Street, 30th Floor<br>Columbus, OH 43215<br><br>*Defendants.* | Case No.: 1:26-cv-1148 |

**COMPLAINT**
**(JURY DEMAND ENDORSED HEREON)**

1. This is an action under 42 U.S.C. §1983 for legal, declaratory and injunctive relief based on Defendants' violations of Plaintiffs William Saki, Jeffrey Wonser, and Patrick Corrigan's right to free speech.

2. Mr. Saki, Mr. Wonser, and Mr. Corrigan are residents and citizens of the State of Ohio who sought to place personalized messages on their license plates.

3. But the Ohio Bureau of Motor Vehicles rejected their applications, relying on a standardless and unconstitutional licensing scheme that grants it unbridled discretion in determining which messages to approve or reject.

4. Meanwhile, Defendants continue to enforce that scheme against all other applicants for vanity license plates, prohibiting them from disclosing information that Plaintiffs wish to receive.

5. Plaintiffs have thus been denied their right to freedom of speech as guaranteed by the First Amendment.

**PARTIES**

6. Plaintiffs William Saki, Jeffrey Wonser, and Patrick Corrigan are citizens of Ohio.

7. Defendant Charles L. Norman is the Registrar of the Ohio Bureau of Motor Vehicles. He is charged with administering and enforcing the BMV's rules and regulations. He is sued in his official capacity for declaratory and injunctive relief, and in his individual capacity for damages.

8. Defendant Andy Wilson is the Director of the Ohio Department of Public Safety, of which the BMV is a division. He oversees Defendant Norman, and either encouraged or knowingly acquiesced to Defendant Norman's actions. He is sued in his official capacity for declaratory and injunctive relief, and in his individual capacity for damages.

**JURISDICTION & VENUE**

9. This Court has jurisdiction over this matter under the following statutes:

a.      28 U.S.C. § 1343 (a)(3), as Plaintiffs are seeking to redress deprivations, under color of State law, of rights, privileges, and immunities secured by the United States Constitution;

b.      28 U.S.C. § 1343 (a)(4), as Plaintiffs are requesting equitable relief under Acts of Congress, specifically 42 U.S.C. § 1983, providing for the protection of civil rights;

c.      28 U.S.C. § 2201 (a), as Plaintiffs are requesting declaratory relief; and

d.      28 U.S.C. § 2202 (a), as Plaintiffs are requesting both preliminary and permanent injunctive relief.

10.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## FACTS

11.    The BMV is responsible for licensing drivers and vehicles for public highways in Ohio.

12.    Historically, the BMV has licensed vehicles for operation on Ohio's highways using license plates with preprinted combinations of letters and numbers with no particular meaning, assigned to drivers in no particular order.

13.    In 1973, the Ohio General Assembly approved a bill that sought to fund roadside parks by allowing vehicle owners to customize the combinations on their license plates to create messages of their own choosing.

14.    Applicants decide how they want those messages to appear—whether to render them forward or backwards, how to space the words in the message, whether to use conventional spelling, whether to use abbreviations, whether to replace letters with similar-sounding or similar-looking numerals, and so on—and submit those messages to the BMV for approval.

15. Those messages sometimes communicate nothing more than the owner's name. For example:

   a. The BMV has approved the message "BARB G."

   b. The BMV has approved the message "DANA A."

   c. The BMV has approved the message "LORIE  K."

   d. The BMV has approved the message "TOM P."

16. Those messages sometimes consist of endorsements of the applicant's goods or services. For example:

   a. The BMV has approved the message "GRASS" for the owner of a lawn-care business.

   b. The BMV has approved the message "FC KR8TM" for the owner of a business called First Choice Kratom.

   c. The BMV has approved the message "NFG TOW" for a trailer owned by NFG Racing.

   d. The BMV has approved the message "MCM AF" for the owner of Mid-Century Modern As F**k Dayton.

17. Other messages are more cryptic, and sometimes completely indecipherable. For example:

   a. The BMV has approved the message "014587."

   b. The BMV has approved the message "CBSP."

   c. The BMV has approved the message "M7XQR12."

   d. The BMV has approved the message "ZYAYYDS."

18. The state does not purport to endorse the messages it approves.

19. For example, the messages it approves are often contradictory. For instance:

    a. The BMV has approved the message "GO BUCKS" but also "GO BLUE."

    b. The BMV has approved the message "GODLY" but also "GODLESS."

    c. The BMV has approved the message "LUV DIRT" but also "H8 DIRT."

    d. The BMV has approved the messages "VAXN8" and "VAXPLZ" but also "ANTIVAX" and "NOVAX."

20. In Ohio, the motoring public generally recognizes messages on vanity plates as coming from the vehicle owner, rather than from the BMV itself.

21. When the program first launched, the BMV was aware of and anticipating the likelihood that some vehicle owners would seek license plates with messages that others would find objectionable.

22. Despite those concerns, the BMV did not initially promulgate any rules governing what messages it would and would not approve on vanity plates.

23. Instead, the BMV assembled a panel of employees with no special expertise or qualifications, and tasked them with operating as government censors, responsible for reviewing applications for vanity plates and deciding whether they should be approved or rejected.

24. In doing so, the BMV took no official position on what messages it would approve or reject.

25. Instead, it left its panel to develop its own criteria over time.

### The *Zucco* settlement

26. Under that regime, the BMV gave its panel unbridled discretion to censor messages based on its subjective assessments of what combinations of letters and/or numbers were "words, connotations or abbreviations of a profane, obscene or vulgar nature" and

"words, connotations or abbreviations that are ethnic or controversial in origin or character, and which are judged by the BMV to be offensive, disparaging or socially insensitive."

27. That scheme was the subject of a previous lawsuit, *Zucco v. Caltrider*, No. 2:01-cv-01270 (S.D. Ohio).

28. In that case, the BMV approved but later revoked the plaintiff's application for a plate reading "RDRAGE," based on its conclusion that "road rage kills people."

29. Because that level of unfettered discretion over speech violates the First Amendment, the BMV settled that lawsuit with an agreement to approve the plaintiff's application and issue his requested license plate.

30. The settlement also required the BMV to adopt narrower guidelines, known as the Special Plate Screening Guidelines ("the Guidelines"), for evaluating applications.

31. An authentic copy of the Guidelines is on file as ECF #2-56.

32. Under the Guidelines, the BMV would reject plates as "inappropriate" only if they contained "words, combinations and/or phrases (in any language or when read either frontward or backward)" that:

    a.    are profane (i.e., swearwords or expletives);

    b.    are obscene;

    c.    are sexually explicit;

    d.    are scatological (i.e., having to do with fecal excrement);

    e.    are so offensive that they could reasonably be expected to provoke a violent response from viewers without additional comment;

    f.    advocate immediate lawlessness; or

g.    advocate lawless activities.

33. But the *Zucco* settlement also permitted the BMV and the Ohio Department of Public Safety to "modify the Guidelines as they may deem appropriate."

**Defendants immediately renege on the *Zucco* settlement**

34. Immediately after the *Zucco* case closed, the BMV began modifying the Guidelines.

35. It now uses different rules at different times.

36. It sometimes rejects messages for containing words that are obscene, sexually explicit, or scatological.

37. It sometimes rejects messages not because they *contain* words that are obscene, sexually explicit, or scatological, but merely because they "can be interpreted as" obscene, sexually explicit, or scatological.

38. It sometimes rejects messages "due to a potential perception of inappropriateness."

39. And it often simply defers to the tastes of random bozos on the Internet.

40. For instance, although an applicant wanted "PLSKYS" placed on a "Stop Bullying" license plate to mean "Please Keep Youth Safe," BMV censors rejected it because people on UrbanDictionary.com gave more thumbs-ups to the meaning "Please Kill Yourself."

41. And although "NIU BI" means "awesome" in Chinese, a BMV censor rejected it because some random person on UrbanDictionary.com with no known language expertise had translated it as "fucking awesome."

42. Under these criteria, there is nothing to prevent the BMV from prohibiting any message it doesn't like.

43. For instance, despite agreeing that "RD RAGE" was consistent with the new guidelines, the BMV subsequently banned variants of that message, including "RDR8G," "RDRA6E," and "RDRAAGE."

44. It likewise bans "RDRAGN," "RDRGE," "RDRAGE1," "RDRAGE2," "RDRAGE3," "RDRAGE4," "RDRAGE5," "RDRAGE6," "RDRAGE7," "RDRAGE8," "RDRAGE9," and "RDRAGE0."

45. Some people do not want to be exposed to license plates with messages the BMV rejects.

46. Plaintiffs do.

**The BMV censorship regime gives no notice of what messages are prohibited.**

47. Under the scheme it adopted after *Zucco*, the BMV has allowed its censors to run amok, censoring messages not because they violate the Guidelines, but because they violate its censors' subjective criteria.

48. It rejected "BOSS BSH" because a BMV censor believed someone could perceive "BSH" as a shortened form of "bish," which the censor believed someone could in turn perceive as slang for "bitch."

49. It rejected "COVDHX" because a BMV censor believed someone could perceive it as "COVID hoax."

50. It rejected "NFG." The applicant sought to remind fellow drivers to "never forget God," but a BMV censor fretted that someone could perceive it as meaning "no fucking good."

51. It rejected "DRIVE TF." The applicant wished to communicate that the vehicle was primarily used to transport their children, whose initials were T and F, but a BMV censor worried that someone might instead perceive it as meaning "drive the fuck."

52. It rejected "SL4YER." A driver wanted to communicate that he was a fan of the heavy-metal band Slayer, but a BMV censor worried that someone could perceive it as meaning "pussy slayer," which could in turn be perceived as sexually explicit.

53. It rejected "WHT R1CE," "LA NEGRA," "POLACK," "DAMICK," and "GYLTY" because BMV censors believed they could provoke Asians, African-Americans, Polish people, Irish people, and police officers to violence.

54. It rejected "TIGSUX" because a BMV censor believed it could be perceived as meaning "Tigers Suck," which could in turn provoke violence from fans of the Massillon High School football team.

55. It rejected "SHAG SW" because a BMV censor believed someone could perceive it as meaning "shag wagon" and in turn perceive "shag wagon" as sexually explicit.

56. It rejected "XXXTRA" because a BMV censor believed someone could perceive "XXX" as a reference to the rating for pornographic films.

57. It rejected "NUK U" because a BMV censor believed someone could perceive it as meaning "nuke you" and in turn be provoked to detonate a nuclear bomb.

58. It rejected "SUKTDRY." While conceding the applicant operated a carpet-cleaning business, a BMV censor believed the message could be perceived as a reference to oral sex.

59. It rejected "TNSAF." While the driver expressed the desire to evoke the Canadian spirit—memorialized as "True North, strong and free" in the Canadian national anthem— a BMV censor worried that the message could also be perceived as "True North strong as fuck."

60. It rejected "BICHOTA." While conceding that *bichota* is a Latinization of "big shot," a BMV censor believed someone could perceive it as meaning "bitch."

61. It rejected "370455 V" because a BMV censor believed that it could be perceived as "asshole."

62. It rejected "XKXX" because a BMV censor believed it "may be affiliated with the Ku Klux Klan."

63. It rejected "EFORTY6." Although the plate was requested for a BMW E46, a BMV censor believed it could be perceived as meaning "Fuck Joe Biden."

64. None of these messages actually violate the Guidelines.

65. The BMV itself is not on notice of what messages it will and will not approve.

66. Instead, its censors approve some messages only until other drivers complain about them, at which point the BMV recalls the plate.

67. For instance, a driver was able to register "GYLTY" in 2013, but BMV censors retroactively rejected it in 2021 on the grounds that it could reasonably be expected to provoke the police to violence.

68. Another applicant was able to register "IDFW GAS" on his Tesla, but BMV censors retroactively rejected it when another driver complained that the F might stand for "fuck."

69. Another applicant was able to register "BUY HASH" in 2021, but BMV censors retroactively rejected it when another driver complained that it was "offensive to me and to others."

**The BMV censorship regime encourages arbitrary enforcement.**

70.    The BMV permits arbitrary enforcement of the criteria it purports to apply, rejecting some messages as violations of its rules while approving virtually identical messages that could not be approved if the rules were being applied consistently.

71.    For instance, although they rejected "F46 LGB" as containing two profane phrases, BMV censors approved both "F46" and "LGB" as individual messages.

72.    The BMV issued a license plate reading "F46" to another driver in 1960.

73.    That plate remains issued today.

74.    Continuing to allow that driver to use "F46" creates a potential perception of inappropriateness.

75.    "F46" can be interpreted as profane.

76.    "F46" can be interpreted as obscene.

77.    "F46" can be interpreted as sexually explicit.

78.    "F46" can be interpreted as scatological.

79.    "F46" is not profane.

80.    "F46" is not obscene.

81.    "F46" is not sexually explicit.

82.    "F46" is not scatological.

83.    "F46" does not violate the Guidelines.

84.    The BMV likewise issued a license plate reading "LGB" to another driver in 2023.

85.    Continuing to allow that driver to use "LGB" creates a potential perception of inappropriateness.

86.    "LGB" can be interpreted as profane.

87.    "LGB" can be interpreted as obscene.

88.     "LGB" can be interpreted as sexually explicit.

89.     "LGB" can be interpreted as scatological.

90.     "LGB" is not profane.

91.     "LGB" is not obscene.

92.     "LGB" is not sexually explicit.

93.     "LGB" is not scatological.

94.     "LGB" does not violate the Guidelines.

95.     There is no rational basis for approving "F46" and "LGB" while rejecting "F46 LGB."

96.     Defendants arbitrarily reject and approve many other messages, as well.

97.     BMV censors approved "MRS YAOI," but they rejected "YAOIPLZ" because they believed someone could perceive it as referring to *yaoi*, a genre of Japanese literature featuring same-sex romantic relationships.

98.     BMV censors rejected "LMAO GAS" and "LMAO EPA" because they believed "LMAO" could be perceived as meaning "laugh my ass off," but they approved "LMAOFF."

99.     BMV censors rejected "AXEHOLE" as profane, but they approved "AXE HOLE."

100.    BMV censors rejected "REDRUM8" as advocating immediate lawlessness, but they approved "REDRUM6."

101.    BMV censors approved "SKEET" but rejected "JIZZ," although they believed both referred to ejaculation.

102.    BMV censors rejected "EATCHIT," but they approved "EAT CHI T."

103.    And there are several messages that BMV censors have at one time denied *and* at another time approved, including "2FASTFU," "BAMAWAP," "BOFADZ," "FILTHYB,"

"FK7," "GASFML," "HIT," "LLIGMA," "LOLICON," "LTLCKR," "PHOQ2,"

"PKLPMP," "SHAGNN," and "STUKATS."

104.    There is no rational basis for approving "MRS YAOI" while rejecting "YAOIPLZ."

105.    There is no rational basis for approving "LMAOFF" while rejecting "LMAO GAS."

106.    There is no rational basis for approving "AXE HOLE" while rejecting "AXEHOLE."

107.    There is no rational basis for approving "REDRUM6" while rejecting "REDRUM8."

108.    There is no rational basis for approving "SKEET" while rejecting "JIZZ."

109.    There is no rational basis for approving "EAT CHI T" while rejecting "EATCHIT."

110.    "MRS YAOI" does not violate the Guidelines.

111.    "LMAOFF" does not violate the Guidelines.

112.    "AXE HOLE" does not violate the Guidelines.

113.    "REDRUM6" does not violate the Guidelines.

114.    "SKEET" does not violate the Guidelines.

115.    "EAT CHI T" does not violate the Guidelines.

116.    "YAOIPLZ" does not violate the Guidelines.

117.    "LMAO GAS" does not violate the Guidelines.

118.    "AXEHOLE" does not violate the Guidelines.

119.    "REDRUM8" does not violate the Guidelines.

120.    "JIZZ" does not violate the Guidelines.

121.    "EATCHIT" does not violate the Guidelines.

**The BMV censorship regime encourages discriminatory enforcement.**

122.    The BMV's current interpretation of the Guidelines permits discriminatory enforcement.

123. Indeed, the BMV's website will not even process applications for license plates unless applicants disclose the meaning of their message so its censors can evaluate the message based on the ideas or opinions it conveys.

124. The BMV censors are more lenient toward messages from Democrats than from Republicans.

125. BMV censors rejected "FJB" because they believed it could be perceived as meaning "Fuck Joe Biden," but they approved "FDT."

126. BMV censors rejected "FK BIDEN," "FKJBIDN," "FJBIDEN," and "FKBID3N," but they approved "FKTRMP," "FUK TRMP," and "FU TRMP."

127. BMV censors rejected "JJBH8TN" because they believed it could be perceived as meaning "Joe and Jill Biden Hating," but they approved "IH8GOP."

128. BMV censors likewise enforce viewpoint discrimination on other topics.

129. Mr. Corrigan sought to register "MAFIA," but BMV censors rejected it. Instead, they told him he could have "NO MAFIA."

130. BMV censors rejected "H8OHIO," "IH8OHIO," and "H8 MY ST8" because they indicated the applicants hate Ohio, but they approved "LUV OH" and "LUVN OH."

131. None of these messages actually violate the Guidelines.

132. The BMV has issued a license plate reading "WHITE," but its website automatically rejects attempts to register "NEGRO."

133. There is no rational basis for approving "WHITE" while rejecting "NEGRO."

134. "NEGRO" does not violate the Guidelines.

**Mr. Wonser requests a vanity plate with no objective meaning**

135. Mr. Wonser likewise ran afoul of the BMV's sweeping censorship regime when he applied for a vanity plate reading "F46 LGB."

136. The string of characters "F46 LGB" has no objective meaning.

137. Most people who see it attach no meaning to it whatsoever.

138. Some have read the numbers as letters and interpreted it as "FAG LGB," a gay-pride message intended to reclaim a homophobic slur.

139. Others—including Defendants—have read it as meaning "Fuck 46 (the 46th president of the United States, Joe Biden), Let's Go Brandon."

140. The string of characters "F46 LGB" does not violate the Guidelines.

141. Nonetheless, the BMV rejected Mr. Wonser's application.

142. In denying Mr. Wonser's application, the BMV was not relying on the Guidelines.

143. The BMV's initial denial discussed a set of guidelines for rejecting applications for vanity plates.

144. The BMV's initial denial did not say that Mr. Wonser's application violated any of those guidelines.

145. The BMV's initial denial told Mr. Wonser his message was "denied due to the potential perception of inappropriateness."

146. Mr. Wonser objected, noting that his message did not violate any of the BMV's criteria.

147. The BMV responded and said that his message did not conform to "Guideline 1," which prohibits messages that "[a]re profane (that is, swearwords or expletives), or can be interpreted as obscene, sexually explicit, or scatological (i.e., pertaining to feces or excrement)."

148. That rule gives the government unbridled discretion to censor speech, as it abandons objective criteria and asks instead whether a message could possibly "be interpreted" as obscene, sexually explicit, or scatological.

149. As every teenage boy knows, literally *anything* can be interpreted as obscene, sexually explicit, or scatological.

150. Mr. Wonser administratively appealed the BMV's rejection of his message on various grounds, noting the arbitrary nature of the BMV's criteria and reminding it of the *Zucco* case.

151. The BMV wrote back nine days later, denying his appeal without specifying any guideline that he had violated.

152. When Mr. Wonser requested a justification, the BMV relied on the settlement agreement in *Zucco*.

153. But in doing so, it shifted its explanation for its denial yet again.

154. Where the BMV had initially said it rejected Mr. Wonser's message "due to the potential perception of inappropriateness," and then because it "can be interpreted as obscene, sexually explicit, or scatological," this message instead said the message was rejected because it "[c]ontains words, combinations and/or phrases (in any language and when read either frontward or backwards) that are profane (that is, swearwords and expletives), obscene, sexually explicit, or scatological (feces or excrement)."

155. But the string of characters "F46 LGB" does not contain "words, combinations and/or phrases (in any language and when read either frontward or backwards) that are profane (that is, swearwords and expletives), obscene, sexually explicit, or scatological (feces or excrement)."

156. In a subsequent e-mail, the BMV notified Mr. Wonser of the potential to appeal the denial.

157. That notice indicated that his appeal could explain "the reason for wanting the plate" and provide documentation supporting the explanation.

158. As it has for other applicants, the BMV would have approved Mr. Wonser's application if he could have made a strong enough showing that his message had an innocuous meaning.

159. For instance, the BMV initially rejected an application for "PC3 EFD" for violating Guideline 1, but approved it after receiving evidence that "EFD" was a reference to the applicant's employer, the Euclid Fire Department.

160. The BMV likewise recalled "SSA" for violating Guideline 1, but then reversed the recall after learning that it was assigned to the owner of a business called "Sarah Schmidt Auto."

161. The BMV likewise rejected "84HO" for violating Guideline 1, but then approved it after learning the plate was intended for a 1984 Hurst Oldsmobile.

162. The BMV likewise rejected "FALICE" for violating Guideline 1, but then approved it after receiving a copy of the applicant's birth certificate, which showed that her middle name was Falice.

163. The BMV then submitted Mr. Wonser's application to its Special Plate Committee for further review.

164. The Committee again rejected Mr. Wonser's application.

165. The Committee had reverted to its original justification for rejecting Mr. Wonser's application, telling him: "it was denied due to the potential perception of inappropriateness."

166. It no longer offered Mr. Wonser any further opportunity to appeal.

167. Instead, it gave him three options: "request a different personalization, get a full refund, or renew your current plate and received a partial refund."

168. Mr. Wonser requested an opportunity to speak to the BMV's Registrar to make his case, but the BMV refused.

169. On May 20, 2022, the BMV processed Mr. Wonser's refund.

170. Through counsel, Mr. Wonser raised the issue with Defendants' attorneys, reminding them of the laws governing the regulation of messages on vanity license plates, requesting approval of his message, and calling for reforms to the BMV's licensing scheme.

171. The BMV refused.

172. In December 2022, Defendant Wilson replaced the previous Director of the Ohio Department of Public Safety.

173. After that change, Mr. Wonser again sought to register various plates with his chosen messages.

174. He could not process any of those requests.

175. The BMV had programmed its computers to automatically reject his messages.

176. Through counsel, Mr. Wonser again raised the issue with Defendants' attorneys.

177. The BMV still did not process Mr. Wonser's request.

178. Mr. Wonser never received plates with those messages.

179. On November 1, 2024, Mr. Wonser attempted to register another vanity plate, reading "LGB F46."

180. "LGB F46" does not violate the Guidelines.

Page 18 of 26

181. The BMV would not process Mr. Wonser's request for that message, deeming it "Inappropriate/Invalid."

182. Defendants' conduct has injured and continues to injure Mr. Wonser.

183. He has suffered economic and emotional injuries, and he has been injured by the loss of the opportunity to spread his message.

### The *Saki* settlement

184. In 2025, Mr. Saki sought to register a license plate that said "GAY" in anticipation of National Coming Out Day.

185. The BMV rejected that request, labeling it "inappropriate."

186. Mr. Saki then attempted to register several alternative license plates, including "HOMO," "FAG," and "F46 LGB."

187. To Mr. Saki, "F46 LGB" means "Fag love: Gavin and Billy," a statement of affection for and commitment to his partner of three years.

188. The BMV rejected that request—and all the others, as well.

189. In September 2025, Mr. Saki sued Defendant Norman and Defendant Wilson over the denials, alleging violations of his First Amendment right to free speech and his right to equal protection.

190. He was joined by another plaintiff whom Defendants had denied a plate reading "MUSLIM."

191. In that case, *Saki v. Norman*, No. 1:25-cv-01893 (N.D. Ohio), this Court brokered a settlement in which Mr. Saki and his co-plaintiff consented to dismissing their case.

192. They made that agreement in exchange for three promises from Defendant Norman and Defendant Wilson.

a. Defendants promised Mr. Saki and his co-plaintiff "that their applications for plates including words such as 'GAY' or 'MUSLIM' would be approved."

b. Defendants promised that the BMV would "review its database and ensure that it adheres to the Special License Plate Screen Guidelines set forth in the settlement reached in *Zucco*."

c. Defendants promised that the BMV would provide instructions on its website for applicants who believe their application has been improperly rejected in violation of the *Zucco* standard.

193. Defendants have not fulfilled their promises.

**Defendants have broken Promise 1.**

194. With Pride Week approaching, Mr. Saki sought to change his plate again, with a new message demonstrating his pride in his identity and reclaiming a pejorative term long used to marginalize gay men in America.

195. To that end, he attempted to register a license plate reading "HOMO."

196. Although they allowed Mr. Saki to register a license plate reading "GAY," Defendants continue—as of this filing—to refuse to approve his applications for the other words he sought to clear in the previous lawsuit, including "HOMO," "FAG," "FAGGOT," and "F46 LGB," as well as "CUNTY" and other messages.

**Defendants have broken Promise 2.**

197. Defendants have not ensured that their database adheres to the *Zucco* criteria.

198. "HOMO," for instance, does not violate any of the *Zucco* criteria.

199. Neither do dozens of other messages that Defendants continue to prohibit despite being alerted to them in the *Saki* litigation.

200. Defendants' database still automatically rejects "H8OHIO," "IH8OHIO," and "H8 MY ST8," although none of those messages violates any of the *Zucco* criteria.

201. Defendants' database still automatically rejects "GYLTY" although that message does not violate any of the *Zucco* criteria.

202. Defendants' database still automatically rejects "YAOIPLZ" although that message does not violate any of the *Zucco* criteria.

203. Defendants' database still automatically rejects "NEGRO" although that message does not violate any of the *Zucco* criteria.

204. And new applications to the BMV are likewise not being screened according to the *Zucco* criteria.

205. For instance, when Mr. Corrigan attempted to register a license plate reading "MAFIA," Defendants' database automatically rejected it, although that message does not violate any of the *Zucco* criteria.

206. Since settling the *Saki* case, Defendants have rejected numerous messages with no justification under those criteria, including "TYPSHH," "J3WBARU," "NINASF," "SMUTY," "FRUNK1T," and "FIXXXER."

**Defendants have broken Promise 3.**

207. Drivers who attempt to register a previously banned message receive a link inviting them to ask the BMV "to review a previously denied license plate."

208. But that link does not provide instructions for applicants who believe their application has been improperly rejected in violation of the *Zucco* standard.

209. Instead, it directs applicants to the BMV's Online Services page.

210. That page does not provide instructions for applicants who believe their application has been improperly rejected in violation of the *Zucco* standard, either.

**The BMV continues to arbitrarily enforce the Guidelines**

211. After learning that the BMV had agreed in *Saki* to permit registration of "F46 LGB," Mr. Wonser again sought to register it himself.

212. But, like Mr. Saki, he discovered that Defendants had never made good on their promise.

213. When the BMV rejected his message again, he expected to receive instructions for challenging the denial on the BMV website, but the link did not produce any such instructions.

214. He attempted to register several other messages, but Defendants' website automatically rejected them, as well.

215. For instance, inspired by a Cadillac he had seen with a license plate reading "MF CADDY," Mr. Wonser attempted to register "MF TUNDRA."

216. To Mr. Wonser, that means "My family's Tundra."

217. The BMV permitted him to register that message.

218. Mr. Wonser paid the registration fee and waited for his new plates to arrive.

219. They never did.

220. Instead, he received an e-mail telling him that BMV censors had reviewed his application and rejected it.

221. In a subsequent e-mail, he discovered that Defendants were not adhering to the *Saki* settlement.

222. Rule 1 of the *Zucco* guidelines rejects a message only if it "Contains words, combinations and/or phrases (in any language and when read either frontward or backward) that are profane (that is, swearwords or expletives), obscene, sexually explicit, or scatological."

223. But in their e-mail defending the rejection, Defendants had rewritten Rule 1, which they now characterize as allowing the denial of messages "due to the potential perception of inappropriateness."

224. Mr. Wonser appealed the denial, but Defendant Norman upheld it.

## CLAIM 1
### FIRST AMENDMENT VIOLATION, 42 U.S.C. § 1983—
### THE GUIDELINES ARE FACIALLY UNCONSTITUTIONAL

225. Plaintiffs re-incorporate all the preceding allegations.

226. The Guidelines represent Defendants' official policies, practices, customs, and usages.

227. The Guidelines empower BMV employees to determine which combinations will or will not be displayed on the official license plates of the State.

228. The Guidelines are unconstitutionally vague and overbroad.

229. The Guidelines fail to give a person of ordinary intelligence fair notice of what messages are forbidden.

230. The Guidelines authorize and encourage arbitrary and discriminatory enforcement.

231. The Guidelines are overbroad, prohibiting a substantial amount of protected speech in relation to their clearly lawful applications.

232. The Guidelines are an unconstitutional prior restraint on Plaintiffs' speech and on the speech of others that they wish to read.

233. The BMV's vague and shifting standards ignore well-established constitutional protections under the First and Fourteenth Amendments to the United States Constitution.

## CLAIM 2
### FIRST AMENDMENT VIOLATION, 42 U.S.C. § 1983—
### THE GUIDELINES ARE UNCONSTITUTIONAL AS APPLIED TO PLAINTIFFS

234. Plaintiffs re-incorporate all the preceding allegations.

235. Defendants have unconstitutionally applied the Guidelines to Plaintiffs' messages.

236. No substantial or compelling governmental interest exists for censoring those messages.

237. No governmental interest in proscribing those messages outweighs their First Amendment right to communicate those messages.

## CLAIM 3
### EQUAL PROTECTION VIOLATION, 42 U.S.C. § 1983

238. Plaintiffs re-incorporate all the preceding allegations.

239. Plaintiffs are three among many people who have attempted to register license plates with strings of characters that do not necessarily violate the Special Screening Guidelines, but could be interpreted as having a meaning that would.

240. When those applications come from people whom Defendants perceive as intending a forbidden meaning, Defendants usually reject those applications.

241. When they come from people whom Defendants do not perceive as intending a forbidden meaning, Defendants usually approve those applications.

242. For instance, Mr. Saki and Mr. Wonser are two among many people who have attempted to register license plates that say "F46."

243. When applications for license plates that say "F46" come from people whom Defendants perceive as criticizing President Biden, Defendants usually reject them.

244. When applications for license plates that say "F46" come from people who Defendants do not perceive as criticizing President Biden, Defendants usually approve them.

245. Defendants' disparate treatment of these classes of applicants burdens Plaintiffs' fundamental rights.

246. Defendants' disparate treatment of these classes of applicants has no rational basis.

247. Defendants' disparate treatment of these classes of applicants does not advance any legitimate, important, or compelling governmental interest.

## CLAIM 4
### FIRST AMENDMENT RETALIATION, 42 U.S.C. § 1983

248.  Plaintiffs re-incorporate all the preceding allegations.

249.  Mr. Saki and Mr. Wonser previously filed lawsuits against Defendants alleging First Amendment violations in the BMV's enforcement of the Guidelines.

250.  Those lawsuits were First Amendment–protected exercises of their right to petition the government for redress of grievances.

251.  Defendants retaliated against Mr. Saki and Mr. Wonser for engaging in that protected activity by interfering with their ability to register their chosen messages.

252.  For instance, they refused to allow Mr. Wonser to register "MF TUNDRA" for his Toyota Tundra.

253.  They said they were refusing to issue the plate due to a "potential perception of inappropriateness."

254.  Specifically, they said "MF is a very common abbreviation for 'Mother F*cking.'"

255.  But similarly situated applicants who have not filed litigation over the Guidelines have been approved for license plates with "MF."

256.  In the past five years, the BMV has issued more than 1,000 other plates with "MF" in them, including "MF CADDY," "MF COBRA," "1 MEAN MF," and "BIG MF."

257.  Each of those messages is equally susceptible to the "potential perception of inappropriateness" that Defendants ascribed to "MF TUNDRA."

258.  Defendants' refusal to approve "MF TUNDRA" while permitting other "MF" plates was motivated by animus arising from Plaintiffs' exercise of their First Amendment rights.

### JURY DEMAND

259.  Plaintiffs demand a trial by jury.

**PRAYER FOR RELIEF**

Plaintiffs therefore request that the Court:

A.   Declare that the Special Plate Screening Guidelines are unconstitutionally vague and overbroad, and thus unconstitutional on their face;

B.   Declare that the Special Plate Screening Guidelines, as applied, violate Plaintiffs' freedom of speech under the First Amendment to the United States Constitution;

C.   Enter a temporary restraining order, preliminary injunction, and permanent injunction barring Defendants from enforcing the Special Plate Screening Guidelines;

D.   Enter a preliminary and permanent injunction ordering Defendants to process and approve Plaintiffs' applications;

E.   Award Plaintiffs damages;

F.   Award Plaintiffs their attorney fees pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54;

G.   Award Plaintiffs their costs;

H.   Grant any further relief that the Court deems proper.

Respectfully submitted,

/s/Brian D. Bardwell
Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave, Suite 400
Cleveland, OH 44103-1125
216-912-2195 Phone/Fax
brian.bardwell@speech.law

*Counsel for Plaintiffs William Saki, Jeffrey Wonser, and Patrick Corrigan*

Page 26 of 26