**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM SAKI, *et al.*, | : | Case No. 1:26-cv-1148 |
| | : | |
| Plaintiffs, | : | Judge Dan Aaron Polster |
| | : | |
| -vs- | : | Magistrate Judge Jonathan D. Greenberg |
| | : | |
| CHARLES L. NORMAN, *et al.*, | : | |
| | : | |
| Defendants. | : | |

<u>**DEFENDANTS' CHARLES L. NORMAN AND ANDY WILSON'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' WILLIAM SAKI, JEFFREY WOSNER, AND PATRICK D. CORRIGAN'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**</u>

Plaintiffs William Saki, Jeffrey Wonser, and Patrick Corrigan filed a Motion for a Temporary Restraining Order and a Preliminary Injunction (the "Motion") prohibiting Defendants Charles L. Norman and Andy Wilson from enforcing a prohibition on certain vanity license plates they allege are protected under the First Amendment and requiring Defendants to approve Plaintiffs' applications for vanity license plates reading "HOMO," "FAG," "FAGGOT," "CUNTY," "F46 LGB," "LGB F46," "MF TUNDRA," and "MAFIA."

Plaintiffs also take the extreme step of asking this Court to strike down the *Zucco* guidelines, which Ohio has used for twenty-five years to review proposed vanity plates, because the guidelines are allegedly both unconstitutionally vague and overbroad.

This Court should deny Plaintiffs' Motion for several reasons. First, Plaintiffs already litigated the state's denial of several of these alphanumeric combinations in a prior case. "F46 LGB." *See Wonser v. Norman*, 2026 U.S. App. LEXIS 13293 (6th Cir. May 5, 2026) ("F46 LGB"). Those claims are thus barred by res judicata.

1

Second, to the extent Plaintiffs assert alphanumeric combinations that have not already been litigated, text on a government-issued vanity license plate is government speech and not subject to First Amendment protection.  Even if this Court finds that text on vanity license plates is private speech, which the Court should not find, it is speech in a nonpublic forum, and the state's restrictions on speech are reasonable and viewpoint neutral. Thus, Defendants' denials do not violate the First Amendment.

Third, the *Zucco* guidelines are not unconstitutionally vague or overbroad. Lastly, Plaintiffs have not established the remaining factors necessary to show they are entitled to the injunctive relief they seek. This Court should deny Plaintiffs' Motion in its entirety accordingly.

## I.      Factual Background

### A.  *Zucco Guidelines*

The Ohio Bureau of Motor Vehicles ("BMV"), part of the Ohio Department of Public Safety ("DPS"), permits Ohio drivers to apply for personalized (e.g., vanity) license plates. *See Wonser v. Norman*, 2025 U.S. Dist. LEXIS 110808, *1-2 (S.D. Ohio June 11, 2025).

The BMV reviews an applicant's proposed personalized license plates pursuant to a previously agreed-upon set of guidelines from a prior federal court case. *See generally Zucco v. Caltrider*, Case No. 2:01-cv-01270 (S.D. Ohio filed Dec. 20, 2001).

The plaintiff in *Zucco* alleged that approval and subsequent revocation of the custom plate "RDRAGE" violated his First Amendment rights. The case settled, which resulted in a series of protocols governing how custom plate applications would be screened (the "*Zucco* Guidelines").

The *Zucco* Guidelines dictate, in part, that personalized license plate applications shall be rejected as inappropriate if:

- they contain words, combinations, and/or phrases (in any language or when read either frontward or backward) that "are profane, obscene, sexually explicit,

scatological," or,

- are "so offensive that they could reasonably be expected to provoke a violent response from viewers without additional comment," or,

- advocate lawlessness, or advocate lawless activities.

*Id.* As applied, the *Zucco* Guidelines also "bar acronyms and abbreviations of inappropriate content. The BMV has applied the *Zucco* Guidelines to vanity license plate applications for twenty-five years. However, the BMV's interpretation of vanity license plate applications under the *Zucco* Guidelines has led to three recently filed complaints (all involving the same plaintiffs as this case) between the Northern and Southern Districts of Ohio.

### B. *Wonser*

On March 9, 2022, Wonser applied for a license plate stating "F46 LGB." *See* Wonser v. Norman, 2026 U.S. App. LEXIS 13293, *3-4 (6th Cir. May 5, 2026). The BMV denied the application because it did not conform to Guideline 1, which barred profanity and obscene language. *Id.* at *3-9. Wonser subsequently appealed the BMV's decision, which the agency also rejected. *Id.* Wonser filed his Complaint on May 3, 2024 – two years, one month, and 9 days after the BMV denied his appeal. *Id.* at *9-10.

Appellees filed a Motion for Judgment on the Pleadings, which generally asserted that Wonser's First Amendment rights had not been violated, that the Guidelines were constitutional, and that Appellant's claims were barred by the statute of limitations. *Id*. at *12-13.

On June 11, 2025, the District Court granted Appellees' Motion.[1] *Id.* at *15-16. The District Court held, in pertinent part, that the:

- initial license plate application was rejected more than two years before the Complaint was filed;

---

[1] The District Court also denied Wonser's pending motion for a preliminary injunction, finding that Wonser "failed to establish a "strong likelihood of success on the merits."" *Id.* at *16.

- denial of subsequent repetitive license plate applications did not constitute a continuing violation sufficient to toll the two-year statute of limitations; and,

- Complainant failed to allege an overbreadth violation relative to his right to receive information from other drivers.

Wonser appealed the District Court's decision to the Sixth Circuit. On May 5, 2026, the Sixth Circuit affirmed the District Court's decision in its entirety, holding, in pertinent part, that:

- "[t]he BMV's denial of any subsequent applications seeking identical relief as a previously rejected license plate application does not constitute a "discrete" act capable of restarting the clock on the statute of limitation." *Id.* at *20;

- Wonser's attempt to invoke the continuing-violation doctrine to satisfy the statute of limitations did not apply. *Id.* at *21; and,

- "[T]he record evidence undisputably shows that Wonser's initial denial, subsequent appeal, and request for reconsideration concerned only the BMV's rejection of the "F46 LGB" license plate. This claim accrued in March 2022. And we find that Wonser's attempt to restart the statute of limitations clock by reasserting an identical claim for relief in April 2024 does not allow him to evade the two-year limitations period. We therefore hold that the district court properly granted defendants' motion for judgment on the pleadings because the applicable statute of limitations bars Wonser's case." *Id.* at *23.

Given the information outlined above, any reference to "F46 LGB" and/or "LGB F46" in Plaintiffs' current Complaint should be summarily dismissed and considered for sanctions, especially given Plaintiffs' failure to mention the underlying Southern District or Sixth Circuit case at all in the current Complaint.

### C. *Saki I*

On September 9, 2025, Plaintiff Saki filed a 42 U.S.C. 1983 First Amendment case. *See Saki v. Norman*, Case No. 1:25-cv-01893, Complaint, ECF 1, PageID 1 (hereafter, "Saki I"). *Saki I* involved DPS's denial of vanity plate applications for "GAY" and "MUSLIM." *Id.* at PageID 17-18, 20-24.

4

DPS agreed to approve vanity plate applications for "GAY" and "MUSLIM" two days later. *See* September 11, 2025, Minutes and Consent Order, ECF 6, PageID 3040-3041. DPS further agreed to:

> [R]eview its database and unlock any words that do not meet the three-prong standard of being "offensive, disparaging or socially insensitive" as set forth in the settlement reached in Zucco v. Caltrider, Case No. 2:01-cv-1270 (S.D. Ohio). The BMV also agreed to provide instructions on its website for applicants who believe their application has been improperly rejected in violation of the Zucco standard.

*Id.* DPS did as it promised, described in more detail below.

### D. Current Complaint – *Saki II.*

Plaintiffs (two of whom are Wonser and Saki) filed their newest complaint on May 17, 2026. *See* Complaint, ECF 1, PageID 1. The crux of the current Complaint is DPS's purported denials of the following vanity plates:

- "F46 LGB" and/or "LGB F46." *Id.* at ¶¶ 179-181, 211;
- "HOMO," "FAG," "FAGGOT," and "CUNTY." *Id.* at ¶¶ 195-196;
- "MAFIA." *Id.* at ¶ 205; and,
- "MF Tundra." *Id.* at ¶ 215.

Plaintiffs also allege Defendants violated the terms of the *Saki I* settlement agreement[2] by:

- Plaintiffs' articulation of Saki I settlement "Promise 1" – "their applications for plates including words such as 'GAY' or 'MUSLIM' would be approved. *Id.* at ¶ 192(a).
    - Plaintiffs' allegation of violation: DPS "allowed Mr. Saki to register a license plate reading "GAY," *Id.* at ¶ 196.

- Plaintiffs' articulation of *Saki I* settlement "Promise 2" – "BMV would "review its database and ensure that it adheres" to the *Zucco* Guidelines. *Id.* at ¶ 192(b).
    - Plaintiffs' allegation of violation: DPS "have not ensured that their database adheres to the *Zucco*" guidelines. *Id.* at ¶ 197.

- Plaintiffs' articulation of *Saki I* settlement "Promise 3" – Defendants promised that the BMV would provide instructions on its website for applicants who believe their

---

[2] Plaintiffs' counsel fails to articulate why this alleged failure – which is denied – was not raised as part of a breach of settlement agreement under *Saki I*, and is instead reasserted here as a separate cause of action.

application has been improperly rejected in violation of the Zucco standard. *Id*. at ¶ 192(c).

> o Plaintiffs' allegation of violation: Denied applicants are directed towards the BMV's Online Services page. *Id.* at ¶ 209.

All of Plaintiffs' allegations relative to the *Saki I* settlement agreement are either wrong or misleading. After *Saki I* was settled, the BMW took the following steps to abide by the terms of the settlement agreement:

- The vanity license plate "GAY" was approved for Mr. Saki as part of the settlement agreement. *See* Simkins Declaration, ¶¶ 12-13.

- "MUSLIM" was not even requested post-*Saki I* settlement. That being said, "MUSLIM" is a vanity license plate currently available for purchase and issuance. *Id.* at ¶¶ 10-11.

- On or about October 1, 2025, DPS IT exported all vanity plate applications from the Invalid Plate Table added before December 31, 2003, for VIS review. *Id.* at ¶ 14. This ensured the BMV is reviewing and approving vanity license plate applications pursuant to the *Zucco* guidelines. *Id.* at ¶ 15.

- This review resulted in the deletion of more than 29,000 previously denied vanity license plate applications. *Id.* at ¶¶ 16-19. While approximately 29,000 previously denied vanity license plate applications are now eligible to be applied for, approximately 3,378 plates remain denied. *Id.*

- On October 20, 2025, the BMV adjusted its online vanity license plate application process, providing a mechanism to challenge the prior denial of a vanity plate. Now, if a vanity license plate application is initially denied as "Inappropriate/Invalid," the new license plate application process permits an applicant to click "[r]equest the BMV to review a previously denied license plate" via a "Plate Denial Review" process, which occurs through the BMV's vanity plate review committee. *Id*. at ¶¶ 21-31.

- "HOMO" and "MAFIA" were not vanity plates at issue in *Saki I* – thus, there could not be a violation of the settlement agreement. Regardless, an application for the vanity license plate "HOMO" was denied on April 10, 1996, and an application for "MAFIA" was denied on December 4, 1995. No subsequent requests for either vanity license plate have been made. This means that HOMO and MAFIA have not been applied for since the BMV's October 20, 2025, revisions to its vanity license plate application process, despite them being core components of Plaintiffs' current Complaint. *Id.* at ¶¶ 41-46.

Plaintiffs also filed a Motion for a Temporary Restraining Order and Preliminary Injunction shortly after filing their current Complaint. *See* Plaintiff's Motion, ECF 2, PageID 30.

## II.      Standard of Review

Fed. R. Civ. P. 65 empowers courts to issue temporary restraining orders. The limited purpose of such an order is to preserve the status quo pending a reasoned resolution of the matter. *Proctor & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996). "The status quo, for purposes of injunctive relief, is the last actual, peaceable, non-contested status which preceded the pending controversy." *Oruganti v. Noem*, 2025 U.S. LEXIS 74269, at *2 (S.D. Ohio Apr. 18, 2025) (cleaned up). Courts consider four well-established factors when adjudicating a temporary restraining order: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the [temporary restraining order]; (3) whether issuance of the [temporary restraining order] would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the [temporary restraining order]." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quotation omitted); *A&W X-Press, Inc. v. FCA US, LLC*, 2022 U.S. App. LEXIS 19615, at *3 (6th Cir. July 14, 2022).

While temporary restraining orders usually rise or fall on the four factors, the likelihood of success on the merits generally forms "the crucial inquiry" in First Amendment cases. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (quotation omitted); *see also Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, 158 F.4th 732, 741 (6th Cir. 2025) (recognizing the likelihood-of-success factor as the most important one in First Amendment cases).

7

### III.    Law and Argument

#### A.  Plaintiffs are unlikely to succeed on the merits of their claims.

> *1. Plaintiff Wonser's claims related to the vanity plates "F46 LGB" and "LGB F46" are barred by res judicata.*[3]

Plaintiff Wonser's claims related to the vanity plates "F46 LGB" and "LGB F46" are barred by the doctrine of res judicata because there is already a final decision on the merits on that issue after it was litigated by the same parties involved in this action. "Pursuant to the doctrine of res judicata, 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" *Autumn Wind Lending, LLC v. Est. of Siegel*, 92 F.4th 630, 634 (6th Cir. 2024), citing *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009), quoting *Montana v. United States*, 440 U.S. 147, 153 (1979).

To succeed on a res judicata defense, the proponent must prove each of the following elements: (1) a final decision on the merits in the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) an identity of the cause of action. *Id.* citing *Sanders Confectionery Prods., Inc. v. Heller Fin. Inc.*, 973 F.2d 474, 480 (6th Cir. 1992) (internal citations omitted). If a case involves two federal

---

[3] In addition to Plaintiff Wonser's requests for "F46 LGB" and "LGB F46" being barred by res judicata, Plaintiff Saki's request for a vanity plate reading "HOMO" and Plaintiff Corrigan's request for a plate reading "MAFIA" are not yet ripe for review.  The basic rationale of the ripeness doctrine is to prevent the courts through avoidance of premature adjudication, from entangling themselves in abstract disagreements…and also to protect…from judicial interference until a…decision has been formalized and its effects felt in a concrete way by the challenging parties. *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014) citing *Abbott Labs v. Gardner*, 387 U.S. 136, 148-49 (1967).  A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all. *Id.* citing *Texas v. United States*, 523 U.S. 296, 300 (1998).  Since, as stated, no one has applied for plates containing the text "HOMO" or "MAFIA," since the BMV's October 20, 2025, revisions to its vanity license plate application process, claims related to these plates are not yet ripe for review and must be dismissed.

actions, "federal res judicata principles apply." *Anagonye v. Transform Auto., LLC*, 2025 U.S. App. LEXIS 17076, \*2 (6th Cir. July 8, 2025), citing *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006).

Plaintiff Wonser litigated this exact issue related to the denial of Wonser's proposed vanity plate reading "F46 LGB" in *Wosner v. Norman, et al.*, Case: 2:24-cv-2160-SDM-EPD. In that action, Plaintiff Wonser alleged that the Defendants' denial violated his First Amendment rights. Plaintiff Wonser also filed for a preliminary injunction, arguing the Defendants' enforcement regime was unconstitutionally vague, overbroad, and did not meet the reasonableness standard. *See* 2:24-cv-02160, Doc. 12 at PageID 74-102. Defendants filed a Motion for Judgment on the Pleadings and a Memo Contra to Plaintiff Wonser's Motion for a Preliminary Injunction. *See* Doc. 9 at PageID 57-69; Doc. 19 at PageID 2363-2371.

On June 11, 2025, the Southern District of Ohio issued an opinion granting Defendants' Motion for Judgment on the Pleadings and denying Plaintiff Wonser's Motion for a Preliminary Injunction. Doc. 38 at PageID 2489-2496. The Sixth Circuit affirmed the District Court's decision in its entirety. *See Wonser v. Norman*, 2026 U.S. App. LEXIS 13293 (6th Cir. May 5, 2026)

Accordingly, a final decision on the merits involving Plaintiff Wonser's claims either was litigated or could have been litigated. This Court should deny Plaintiffs' Motion for a Temporary Restraining Order requiring Defendants to approve the license plates "F46 LGB" and "LGB F46."[4]

> 2. *The text on Plaintiffs' proposed vanity plates is government speech and Plaintiffs' First Amendment claims are inapplicable as a matter of law.*

---

[4] While the vanity plate "LGB F46" was not specifically litigated in *Wosner v. Norman, et al.*, Case: 2:24-cv-2160-SDM-EPD, it is functionally the same as "F46 LGB," which was litigated. Therefore, the same analysis can be applied. Even if this Court disagrees, the analysis in Section 3, *infra*, applies to "LGB F46."

The First Amendment to the United States Constitution prohibits the government from "abridging the freedom of speech." U.S. Const., Amend. I. However, the First Amendment does not constrain the government when it is speaking for itself. *See e.g., Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009); *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 553 (2005). The government must adopt and convey particular viewpoints to achieve its policy goals. *See e.g. Matal v. Tam*, 582 U.S. 218, 234 (2017); *Walker v. Texas Division, Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207-208 (2015). While the United States Supreme Court has found that specialty license plate *designs* are government speech, *Walker*, 576 U.S. at 210, it has yet to directly address whether the alphanumeric text on a state's vanity license plates constitutes government speech.

Several federal and state courts, however, have ruled on this issue, with split decisions. Some courts have determined that the alphanumeric text on a state's vanity plates constitutes government speech and is thus not subject to First Amendment protections. *See Odquina v. City & Cnty. of Honolulu*, D. Haw. No. 22-cv-407-DKW-RT, 2022 U.S. Dist. LEXIS 201175 (Nov. 4, 2022); *Comm'r of Ind. Bureau of Motor Vehicles v. Vawter*, 45 N.E.3d 1200, 1204-05 (Ind. 2015); *Gilliam v. Gerregano*, 2025 Tenn. LEXIS 54 (Tenn. Feb. 26, 2025); *M J Nichols Co, Inc. v. Thompson*, 2025 U.S. Dist. LEXIS 257869 (W.D. Wisc. Dec. 12, 2025). Other courts have held that the text on vanity plates is private speech subject to the First Amendment. *See Overington v. Fisher*, 733 F. Supp. 3d. 339, 343 (D. Del. 2024); *Ogilvie v. Gordon*, 2020 U.S. Dist. LEXIS 259377, at *5 (N.D. Cal. July 8, 2020); *Hart v. Thomas*, 422 F. Supp. 3d 1227, 1233 (E.D. Ky. 2019); *Kotler v. Webb*, 2019 U.S. Dist. LEXIS 161118, at *8 (C.D. Cal. Aug. 29, 2019).

This Court should follow the two most recent cases on this topic - *Gilliam* and *M J Nichols* – and hold that they most clearly follow the United States Supreme Court's precedent on this issue.

10

As a result, Defendants urge this Court to apply the same test as the Tennessee Supreme Court did in *Gilliam* and the Western District of Wisconsin did in *MJ Nichols*, and find that Ohio's vanity plates are government speech not subject to the First Amendment.

Both the Tennessee Supreme Court in *Gilliam* and the Western District of Wisconsin in *M J Nichols* used a three-part test to evaluate whether the alphanumeric combinations on their states' vanity license plates were government speech. *See Gilliam* at \*24 and *M J Nichols* at \*19. That test focuses on: (1) the history of the expression at issue; (2) the public's likely perception as to who (the government or the private person) is speaking; (3) and the extent to which the government has actively shaped or controlled the expression. *Id.* citing *Shurtleff v. City of Boston*, 596 U.S. 243, 252 (2022). This Court should apply the same test and find that the alphanumeric text on Ohio's license plates is government speech.

Under the first prong, the general history of license plates in Ohio, as well as Ohio's vanity plate program, weighs in favor of alphanumeric text on vanity plates constituting government speech. Ohio vehicle owners are generally required to display a distinct registration number on their license plates in a visible manner. The registration number communicates to law enforcement and members of the public that the number can be used to identify the vehicle. *E.g. Walker*, 576 U.S. at 212 ("each Texas license plate is a government article serving the governmental purposes of vehicle registration and identification."). In short, the text on license plates, personalized or otherwise, falls into the category of the speech that the *Walker* court identified as "essentially government IDs." *M J Nichols*, 2025 U.S. Dist. LEXIS 257869 at \*20, citing *Walker*, 576 U.S. at 212.

More specifically, Ohio's vanity plate program has existed since 1973. During this time, the alphanumeric combinations on personalized plates have communicated information about the

11

vehicles on which they are displayed. When analyzing this exact issue, the *Tennessee* Supreme Court noted that "the thoughts or sentiments expressed by a government entity that accepts and displays an object may be quite different from those of either its creator or its donor." *Gilliam* at *27 citing *Summum*, 555 U.S. at 476. For example, a vehicle owner may use the text on a vanity plate to express something unique about their life philosophy, pay tribute to a favorite musician or sports team, or tell a joke. *See id.* When the Department approves such a personalized plate, however, it uses the text combination to communicate something different—that the vehicle may be identified using that unique combination of characters. *Id.* So, since the state is communicating something with that text too, it reviews applications to ensure that the combination is not offensive or contrary to public policy. *Id.* Ohio engages in the same type of review with its vanity plates. It does so because it communicates something through these plates (i.e., vehicle identification) and therefore, it must ensure that the combination is not offensive or contrary to its public policy. As a result, it satisfies the first prong of the three-part analysis.

Under the second prong, Courts consider the public's perception of who is speaking. *Gilliam* at *29; *M J Nicholas* at *21-22. In *Walker*, the United States Supreme Court held that the public was likely to perceive Texas's specialty plate designs as government speech because "Texas license plates are, essentially, government IDs," and individuals who observe designs on IDs reasonably perceive them as conveying a message on behalf of the government issuer. 576 U.S. at 212. The *Gilliam* Court held that this reasoning applies equally to a state's vanity plates, noting that "they are government articles that drivers are statutorily required to display on their vehicles and that must be returned to the government when revoked or no longer in use." *Gilliam* at *29. In *M J Nichols*, the Western District of Wisconsin noted there were hundreds of thousands of personalized plates currently registered in the state, and that the Wisconsin Department of

12

Transportation received thousands of personalized plate applications each of the previous three years. *M J Nichols* at \*22. So, a substantial number of Wisconsinites had first-hand knowledge of the Department's role in reviewing, approving, and issuing personalized plates. *Id.*

In *Walker*, the Supreme Court noted that "a person who displays a message on a…license plate likely intends to convey to the public that the State has endorsed that message." *Id.* quoting *Walker*, 576 U.S. at 212. Additionally, the Court observed in *Walker* that bumper stickers are the obvious medium by which motorists may broadcast purely personal messages from their vehicles without any government oversight. *Walker*, 576 U.S. at 212.

Just like the above examples, Ohio reviews and approves thousands of vanity plates each year, so the process for review and approval of these plates is well-known throughout the state. Additionally, like the license plates in Tennessee, Ohio's license plates—and more specifically, vanity plates—are essentially government articles that drivers are required to display on their vehicles and that must be returned to the government when revoked or no longer in use. *See* Simkins Declaration at ¶ 47.

Ultimately, the Supreme Court's logic in *Walker* holds true for Ohio - if drivers wish to display a purely personal message on their vehicles, a bumper sticker is the obvious way to do so, while it is understood that license plates, even if they are vanity plates, are subject to a level of government oversight. Accordingly, Ohio meets the second prong of the three-part analysis.

Finally, under the third prong, courts consider the extent to which the State has actively shaped or controlled expression through personalized plates. *Gilliam* at \*35. In *Walker*, the Supreme Court found that Texas was required to approve specialty plate design proposals before they could appear on the Texas plate and that Texas had actively exercised that authority by rejecting at least a dozen proposed designs. 576 U.S. at 213. In *Gilliam*, the Court held that

Tennessee likewise had the statutory authority to approve or deny applications for personalized plates and had actively exercised that authority by rejecting nearly one thousand plate requested combinations. *Gilliam* at *35-36. Similarly, *M J Nichols* noted that Wisconsin had the authority to review every personalized plate application, and routinely exercised that authority by denying 694 applications in 2024 alone. *M J Nichols* at *23. Ultimately, the meaningfulness of the state's oversight and its exercise of veto power are paramount. *M J Nichols* at *25, interpreting *Walker* and *Shurtleff*.

Here, under the *Zucco* settlement, Ohio has the authority to review, approve, or deny proposed vanity plates based on certain specified criteria. The state has exercised this power under *Zucco* for nearly a quarter-century. Indeed, this *very case* illustrates Ohio's active oversight and review of proposed vanity plates. Ohio's ultimate rejection of proposed vanity plates that contained homophobic slurs such as "HOMO," "FAG," and "FAGGOT" shows that this process is far from perfunctory or a rubber stamp. In fact, Ohio rejects hundreds of proposed vanity plates per year. Simkins Declaration at ¶ 48. Accordingly, Ohio exercises the same level of control over its process as Tennessee and Wisconsin. Ohio meets the third prong of the three-part analysis as a result.

Since Ohio clearly meets all three prongs of the test that the United States Supreme Court outlined in *Shurtleff v. City of Boston*, 596 U.S. 243, 252 (2022), the alphanumeric text on its vanity plates is government speech and is thus not subject to the First Amendment. This, in itself, compels dismissal of Plaintiffs' Complaint and the injunctive relief they seek.

> 3. *Alternatively, if this Court finds that the alphanumeric text on Plaintiffs' proposed vanity license plates is not government speech, which it should not find, the state's rejection of these plates does not violate the First Amendment.*

Even if this Court finds that the alphanumeric text on Plaintiffs' proposed vanity license plates is not government speech, which it should not, the state's rejection of these plates does not

14

violate the First Amendment. If this Court determines that the vanity plate text is private speech, it must first engage in a forum analysis. Forum analysis is used to "evaluate government restrictions on purely private speech that occurs on government property." *Ogilvie*, 2025 U.S. Dist. LEXIS 259377, *15 (July 8, 2020) citing *Walker*, 576 U.S. at 215, citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985).

The Supreme Court has recognized four types of fora: (1) the traditional public forum; (2) the designated public forum; (3) the limited public forum; and (4) the non-public forum. *Id.* citing *Walker*, 576 U.S. at 215-16. In both traditional and designated public forums, restrictions on private speech are subject to strict scrutiny. *Id.* at *16 citing *Summum*, 555 U.S. at 469-70. In limited and nonpublic forums, restrictions on private speech must only be reasonable and viewpoint-neutral. *Id.* citing *Summum*, 555 U.S. at 470, citing *Cornelius*, 473 U.S. at 800.

Most courts that have considered the question have decided that license plates are a nonpublic forum. *Id.* citing *Hart v. Thomas*, 422 F. Supp. 3d 1227, 1233 (E.D. Ky. 2019); *Mitchell v. Md. Motor Vehicle Admin.*, 450 Md. 282, 310 (2016); *Byrne v. Rutledge*, 623 F.3d 46, 54 (2d Cir. 2010). This means that restrictions on speech must only be reasonable and viewpoint neutral. *Id.* "Whether a restriction is "reasonable" depends upon "the purpose of the forum and all the surrounding circumstances." *Cornelius*, 473 U.S. at 809.

To survive First Amendment scrutiny, the restriction need not be the most reasonable or the only reasonable limitation imaginable. However, at a bare minimum, the law must be consistent with a legitimate government interest. *Hart*, 422 F. Supp. 3d at 1233, citing *Byrne*, 623 F.3d at 55. In assessing viewpoint neutrality, "two guiding principles emerge." *Id.* citing *Byrne*, 623 F.3d at 55. "First, the government may…restrict content by prohibiting any speech on a given topic or subject matter. Second, however, once the government has permitted some comment on a

15

particular subject matter or topic, it may not regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Byrne*, 623 F.3d at 54-55.

As an initial matter, Plaintiffs admit that the proposed vanity plates reading "HOMO," "FAG," and "FAGGOT" contain pejorative homophobic slurs that he wishes to "reclaim." *See* Complaint, ECF No. 1, PageID 20, ¶¶ 194-196. Meanwhile, Plaintiff Wonser admits that his proposed vanity plate "F46 LGB" is a "string of characters that has no objective meaning." *Id.* at PageID 14-15, ¶¶ 135-136. When he attempted to register a vanity plate reading "LGB F46" he presumably also believed that to be a string of characters that had no objective meaning, since the sequence of "LGB" and "F46" is merely flipped. *Id.* at PageID18, ¶¶ 179-180. These admissions alone illustrate that Plaintiffs are not entitled to a Temporary Restraining Order or injunctive relief. Meanwhile, Defendants also properly rejected Plaintiff Saki's proposed "MF TUNDRA" and "CUNTY" plates and Plaintiff Corrigan's proposed "MAFIA" plate.

Concerning "F46 LGB" and "LGB F46," the First Amendment protects the communication of ideas, not meaningless strings of characters. *Giebel v. Sylvester*, 244 F.3d 1182, 1186-87 (9th Cir. 2001) ("in general, words communicating information are 'speech' within the meaning of the First Amendment, whether or not the words convey important ideas."), citing *Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 516 (1996). Thus, at a minimum, Plaintiff Wonser's license plate must communicate information or convey an idea to constitute free speech under the First Amendment. However, as stated, Plaintiffs admit that "F46 LGB" and, by implication, the "LGB F46" license plates involve "strings of characters" with "no objective meaning." That admission alone should begin and end the Court's analysis of the Complaint as to those proposed vanity plates because they fail to allege a viable First Amendment communication for either.

Similarly, Plaintiff Saki does not have the right to display profanity or slurs on government-issued license plates, which he seeks through the requested "HOMO," "FAG," "FAGGOT," and "CUNTY." *See Odquina v. City & Cnty. of Honolulu*, 2024 U.S. Dist. LEXIS 77359, *32 (D. Haw. Apr. 29, 2024) (noting that a rule restricting license plate profanity was reasonable because it furthered the legitimate government interest of sheltering members of the public and children from viewing obscene or offensive messages in the course of their daily lives.) The *Zucco* Guidelines compel rejection of plates as inappropriate if they contain "words, combinations, and/or phrases (in any language or when read frontward or backward)" that are profane, obscene, sexually explicit, scatological, "so offensive that they could reasonably be expected to provoke a violent response from viewers without additional comment," or advocate for lawlessness or advocate for lawless activities. Compl. at ¶ 32.

It is reasonable to determine that the plates "HOMO," "FAG," and "FAGGOT," are obscene and could even provoke violence from those offended by perceived attacks on members of the gay or lesbian community. Meanwhile, "CUNTY" is a profane term referencing the female reproductive anatomy.  The state clearly has a legitimate government interest in not disparaging the LGBTQ community, prohibiting outright profanities, and curbing potential violence. Furthermore, the state has not allowed comments on these topics that favor some viewpoints at the expense of others. While Plaintiff Saki may contend that the state allowed him to register a plate that reads "GAY," that is simply not in the same derogatory class as "HOMO," "FAG," or "FAGGOT."  Accordingly, this speech is not protected by the First Amendment.

The BMV's decision to deny Plaintiff Wonser's "MF TUNDRA" vanity plate is likewise reasonable and viewpoint neutral. Despite what Plaintiff Wonser claims, "MF" is clearly an interpretation/abbreviation of "mother fucker" or "mother fucking" in everyday parlance, and it is

17

reasonable to deem a plate that is effectively interpreted to mean "Mother Fucking Tundra" as obscene. Furthermore, Plaintiffs do not appear to claim that the state has favored some other viewpoint at the expense of this one, in this instance.

Finally, the state's decision to deny Plaintiff Corrigan's "MAFIA" vanity plate is also reasonable and viewpoint-neutral. The mafia is literally an organized international body of criminals, operating originally in Sicily and now especially in Italy and the United States. It has a complex and ruthless behavioral code. *See* Oxford Languages Dictionary. Accordingly, it is exceedingly reasonable to deem a plate reading "MAFIA" as advocating lawlessness or lawless activities. As with "MF TUNDRA," Plaintiffs do not appear to claim that the state favored some other viewpoint at the expense of this one. Indeed, it is unclear what such a viewpoint would even be.

Accordingly, even if this Court deems Plaintiffs' proposed vanity plates to be private speech, they are speech in a nonpublic forum. As a result, limits on this speech must only be reasonable and viewpoint-neutral.  Because all of the BMV's denials are both reasonable and viewpoint-neutral, they did not violate the First Amendment. As such, Plaintiffs are unlikely to succeed on the merits of their claims.

> 4. *Defendants' guidelines are not unconstitutionally vague because the meaning of the terms is apparent to a person of ordinary intelligence and, as written, they do not authorize or encourage arbitrary and discriminatory enforcement.*

Defendants' guidelines are not unconstitutionally vague. The constitutional vagueness test has two parts. A statute, rule, or regulation is vague if: (1) it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; (2) it may authorize and even encourage arbitrary and discriminatory enforcement. *Condon v. Wolfe*, 310 Fed. Appx. 807, 821 (6th Cir. 2009); *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). "A party's claim that a

18

statute is unconstitutionally vague faces a high bar, as few statutes meet the void-for-vagueness threshold." *Mt. Pleasant Blacktopping Co. v. Greene Cnty.*, 2022 U.S. App. LEXIS 12057, *8 (6th Cir. 2022).

Again, under the *Zucco* Guidelines, Ohio must reject plates as inappropriate if they contain "words, combinations, and/or phrases (in any language or when read frontward or backward)" that are profane, obscene, sexually explicit, scatological, "so offensive that they could reasonably be expected to provoke a violent response from viewers without additional comment," or advocate for lawlessness or advocate for lawless activities.

A person of ordinary intelligence understands the common dictionary definitions of the words "profane" (involving profanity or other disrespectful language), "obscene" (portraying offensive, disgusting material), "sexually explicit," and "scatological" (related to excrement or excretion). "So offensive that it could reasonably provoke a violent response" is a reasonable standard, and so is "advocating for lawlessness or lawless activities." Accordingly, a person of ordinary intelligence can understand the *Zucco* Guidelines.

The *Zucco* Guidelines likewise do not authorize or encourage arbitrary and discriminatory enforcement. *At most*, Plaintiffs' allegations in their Motion for a Temporary Restraining Order and Complaint support the argument that the *Zucco* guidelines have been inconsistently *enforced*. However, "allegedly arbitrary or inconsistent enforcement of a regulation whose terms are unambiguous does not render the regulation impermissibly vague." *Mt. Pleasant Blacktopping Co. v. Greene Cnty.*, 2022 U.S. App. LEXIS 12057, *9 (6th Cir. 2022); *see also 600 Marshall Entm't Concepts, LLC v. City of Memphis*, 705 F.3d 576, 586-87 (6th Cir. 2013). Since Plaintiffs have only claimed allegedly arbitrary or inconsistent enforcement of the *Zucco* guidelines, they are unlikely to succeed on the merits of this portion of their claim.

*5. Defendants' guidelines are not unconstitutionally overbroad.*

Similarly, the Zucco Guidelines are not unconstitutionally overbroad. According to the First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech. *United States v. Henson*, 705 Fed. Appx. 348, 352 (6th Cir. 2017) citing *United States v. Williams*, 553 U.S. 285, 292-93 (2008). The doctrine seeks to strike a balance between competing social costs. To maintain an appropriate balance, courts have vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep. *Id.* citing *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 485 (1989); *Broaderick v. Oklahoma*, 413 U.S. 601, 615 (1973). Invalidation for overbreadth is "strong medicine" that is not to be "casually employed." *Id.* citing *Los Angeles Police Dept. v. United Reporting Publishing Corp.*, 528 U.S. 32, 39 (1999).

The first step in a facial overbreadth analysis is to construe the challenged statute, as it is impossible to determine whether a statute reaches too far without first knowing what the statute covers. *Williams*, 553 U.S. at 293. The second step is to determine whether the statute prohibits a substantial amount of protected expressive activity. *Id.* at 297.

Here, the strong medicine of the overbreadth doctrine should not be employed to invalidate the twenty-five-year *Zucco* Guidelines. Application of laws or regulations that violate the First Amendment can still be remedied through as-applied litigation, and, as a result, the overbreadth doctrine is used sparingly and only as a last resort. *Virginia v. Hicks*, 539 U.S. 113, 119 (2003); *Broaderick*, 413 U.S. at 613. There is no reason to exercise that last resort here.

As with their vagueness analysis, Plaintiffs appear to take issue with how the state has applied the *Zucco* guidelines. Plaintiffs' main points of contention appear to be how the state *construes* the criteria. There is no indication that guidelines requiring that words, combinations,

20

and/or phrases (in any language or when read frontward or backward)" must not be profane, obscene, sexually explicit, scatological, must not be "so offensive that they could reasonably be expected to provoke a violent response from viewers without additional comment," and must not advocate for lawlessness or for lawless activities inherently prohibit substantial amounts of protected speech. Indeed, the *Zucco* Guidelines have been in place for nearly a quarter-century and have survived many challenges. There is simply no reason to completely jettison them. Accordingly, Plaintiffs are unlikely to succeed on their overbreadth challenge.

### B. Plaintiffs cannot show irreparable harm.

In addition to being unlikely to succeed on the merits, this Court should deny Plaintiffs' Motion because they will not suffer irreparable harm. A preliminary injunction is not a shortcut to the merits of a case. *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 197 (3d Cir. 2024). Furthermore, a preliminary injunction cannot be granted if the movant does not show any extent of irreparable harm. *Farnham v. Campari Am., LLC*, 2025 U.S. App. LEXIS 33075, \*2 (Dec. 17, 2025), citing *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326-27 (6th Cir. 2019). "Irreparable harm is an indispensable requirement for a preliminary injunction, and 'even the strongest showing' on the other factors cannot justify a preliminary injunction if there is no imminent and irreparable injury." *Id.* citing *Memphis A. Phillip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) quoting *D.T.*, 942 F.3d at 326-27. If a movant fails to "present the existence of an irreparable injury," the inquiry ends and the court "need not consider" the other injunction factors. *Id.* citing *D.T.*, 942 F.3d at 327.

Plaintiffs' Motion does not discuss irreparable harm at all. That is likely because the harm suffered by Plaintiffs is minimal. At most, they would only be without their desired license plates until the case resolves. Such a concern does not amount to an irreparable injury warranting

injunctive relief.  In reality, Plaintiffs are encouraging the Court to hastily leapfrog the merits of this action and effectively decide this case on a preliminary motion.  There is no reason to do so.

Indeed, Plaintiffs' lackadaisical prosecution of their underlying claims cut deeply into the question of what irreparable harm they face.  Wonser's application for MF TNDRA was denied in November 2025, yet he waited almost six months to raise this issue with the Court.  Simkins Declaration at ¶ 38; Exhibit C.  Although Saki sought and obtained his GAY license plate in September 2025, neither he nor Mr. Corrigan have even applied for any of the plates listed in the Complaint.  Accordingly, although Plaintiffs claim great constitutional injury through the BMV's process, they have not proceeded as if it is an injury in need of an immediate solution.

While it is true that, in First Amendment cases, the likelihood of success on the merits will often be determinative, *Déjà vu of Nashville, Inc. v. Metro. Gv't of Nashville & Davidson County*, 274 F.3d 377, 400 (6th Cir. 2001), a district court still must consider the four factors when determining whether to grant preliminary relief.  *Id.* Accordingly, since Plaintiffs do not even mention this factor in their Motion, this Court should decline to grant them injunctive relief.

**C.**     **Third parties would be substantially harmed, and the public interest would be seriously hindered if Plaintiffs seek to suspend the Zucco Guidelines entirely.**

When ruling on a motion for preliminary relief, the question of whether the public interest is served and the question of whether issuance of the injunction will cause substantial harm to others (the third and fourth elements of the inquiry) "'merge' when the government is a party." *OPAWL v. Yost*, 2024 U.S. App. LEXIS 25370, *32 (6th Cir. Oct. 8, 2024) citing *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Sixth Circuit has recognized that "[t]he 'inability to enforce its duly enacted [law] clearly inflicts irreparable harm on the State.'" *Yost* at *32 quoting *Abbott v. Perez*, 585 U.S. 579, 602 (2018).

Plaintiffs simply cannot meet elements three and four of the preliminary injunction standard—harm to others and the public interest—if they seek to enjoin the state's application of the *Zucco* Guidelines during the pendency of this action. Suspending the *Zucco* Guidelines altogether would be profoundly destructive to both third parties and the public interest. Total suspension of the guidelines would leave Defendants with no guidance whatsoever on how custom plate applications should be processed. Defendants would be forced to either permit all plates— and, as a result, allow even the most profane and obscene vanity plates to grace our streets, roads, and highways—reject all vanity plates, or develop their own informal standards. The final possibility is particularly ironic, considering that perceived informalities in the approval process have led Plaintiffs to allege constitutional violations in the first place. For these reasons, a suspension of the *Zucco* Guidelines would be wholly unmanageable and would only serve to exacerbate the exact thing that Plaintiffs perceive as a problem.

## IV.    Conclusion

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction in its entirety.

Respectfully submitted,

*/s/ Ryan C. Spitzer*
Ryan C. Spitzer (0093515)
Andrew Fraser (0097129)
**ISAAC, WILES, BURKHOLDER & MILLER LLC**
Two Miranova Place, Suite 700
Columbus, Ohio 43215
Phone: 614-221-2121
Fax: 614-365-9516
rspitzer@isaacwiles.com
afraser@isaaacwiles.com

*Attorneys for Defendants Charles L. Norman and Andy Wilson*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify the foregoing Memorandum in Opposition has been filed electronically with the Court on May 26, 2026, and a copy of the foregoing has been served via electronic mail upon:

Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave., Suite 400
Cleveland, Ohio 44103-1125
216-912-2195
brian.bardwell@speech.law

/s/ <i>Ryan C. Spitzer</i>
Ryan C. Spitzer (0093515)
