IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **WILLIAM SAKI,** *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>**CHARLES L. NORMAN,** *et al.*,<br><br>*Defendants.* | Case No.: 1:26-cv-1148<br><br>Judge Dan Aaron Polster<br><br>Magistrate Judge Jonathan D. Greenberg |
| **PLAINTIFFS WILLIAM SAKI, JEFFREY WONSER, AND PATRICK CORRIGAN'S EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL** | |

Plaintiffs William Saki, Jeffrey Wonser, and Patrick Corrigan respectfully move under Fed. R. Civ. P. 62(d) and Fed. R. App. P. 8 for an injunction pending appeal of the Order denying their motion for a temporary restraining order and preliminary injunction (ECF #2) and dismissing the action. The Order effectively denies Plaintiffs the opportunity to speak their chosen messages while they await Defendants' decisions on their applications; this inflicts especially severe injury on Mr. Saki, who will be unable to disseminate his message during Pride Month, the specific occasion for his speech and a time when his message has heightened salience.

The Court's order reaching this outcome went astray by treating Plaintiffs' complaint as a motion to enforce the consent order in *Saki v. Norman*, No. 1:25-cv-01893 (N.D. Ohio). But neither Mr. Wonser nor Mr. Corrigan would have had standing to enforce that order, and although Mr. Saki may have, the Court had not retained jurisdiction to enforce that settlement. Although they were discussed as factual background in the Complaint, Plaintiffs did not seek enforcement of the *Saki I* settlement or the *Zucco* guidelines; the BMV's immediate breaches of

Page 1 of 4

the *Zucco* settlement, followed by their immediate breach of the *Saki I* settlement made clear that the only workable solution is a resolution on the merits of the constitutional questions.

Instead, the Complaint sought declaratory, injunctive, and monetary relief on the First and Fourteenth Amendment claims it raised. *See* ECF #1, PageID #26. The Court's order did not adjudicate any of those claims, instead ordering the BMV to recommit to the *Zucco* standards. Even then, the Court's instructions on the record were inconsistent with the *Zucco* standards, directing Defendants to review applications for messages such as "HOMO" not by evaluating them against the *Zucco* standards, but by deciding whether they considered the word pejorative or offensive—exactly the subjective analysis that *Zucco* was intended to end.[1]

While the Court was ambivalent about Mr. Saki's right to a plate reading "HOMO," the *Zucco* guidelines and the First Amendment are not. "HOMO" is not profane, obscene, sexually explicit, or scatological, nor could it reasonably be expected to provoke a violent response, nor does it advocate immediate lawlessness. By granting Defendants nearly a month to decide whether it is allowed under *Zucco*—a question already answered by their decision to continue rejecting applications for it after both *Zucco* and *Saki I*—the Court has effectively denied Mr. Saki any relief at all, as his application to register his new car was meant to celebrate Pride Month in Cleveland, which kicks off on June 1. Even if Defendants change their position on the Court's June 19 deadline, there will be little to no time in which Mr. Saki can both apply for and receive his plate in time for the paramount celebration of gay American culture.

---

[1] *See* Complaint, *Zucco v. Caltrider*, No. C2-01-1270 (S.D. Ohio), ¶ 11 (noting BMV policy against "words, connotations or abbreviations that are ethnic or controversial in origin or character, and which are judged by the BMV to be offensive, disparaging or socially insensitive.").

The Court should therefore grant the motion for an injunction pending appeal and order Defendants to issue the requested plates—subject to recall in the event the appeal is unsuccessful. Plaintiffs are entitled to the injunction because:

1. They are likely to prevail on the merits.[2] The First Amendment does not tolerate the unbridled discretion Defendants currently wield. As laid out in their motion, whose arguments they reincorporate here, Plaintiffs are entitled to the relief prayed for because the censorship regime actually in place at the BMV is unconstitutionally vague and overbroad. Defendants have effectively admitted the vagueness of their policies, relying on evidence that they are rejecting messages not based on any objective criteria but on "the potential perception of inappropriateness,"[3] which fails to put people of ordinary intelligence on notice of what the policy will or will not allow. Nor have Defendants offered any evidence—in their opposition brief or at the hearing—contradicting the proof of the substantial overbreadth of their censorship regime.

2. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Bays v. City of Fairborn*, 668 F.3d 814, 825 (6th Cir. 2012). So while the injury is already irreparable for Mr. Wonser and Mr. Corrigan, who cannot disseminate their messages while awaiting the BMV's decisions, the Court's Order inflicts even greater injury on Mr. Saki, who is barred from attempting to reappropriate the pejorative "HOMO" at the exact moment when his message is most likely to have its intended effect.[4]

3. Granting the injunction will not cause substantial harm to others, as being exposed to free speech—even if that speech is offensive—is not a cognizable injury unless "substantial privacy interests are being invaded in an essentially intolerable manner." *Cohen v. California*, 403 U.S. 15, 21 (1971).

---

[2] Because Plaintiffs intend to "stand on the complaint as dismissed," *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 558 (6th Cir. 2017), the Court of Appeals will have jurisdiction to hear their appeal of a dismissal without prejudice.

[3] ECF #6-4, PageID #3197.

[4] James L. Gibson, Lee Epstein & Gregory P. Magarian, *Taming Uncivil Discourse:* Does Reappropriating Group Insults Work?, 41 Political Psychology 383 (2020) ("[W]hen a group is seen as taking control of a historically disparaging term, it can indeed neutralize the insulting content of the term. But reappropriation works best when observers are able to draw inferences about the motives and intent of the speakers.").

4. Granting the injunction is in the public interest, as "it is always in the public interest to prevent the violation of a party's constitutional rights," *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). This is particularly true in cases involving infringements on the right of free speech. *Nixon v. N. Local Sch. Dist. Bd. of Educ.*, 383 F. Supp. 2d 965, 975 (S.D. Ohio 2005) ("[P]rotection of constitutional rights, and particularly First Amendment rights, is always in the public interest.").

The Court should therefore enter an injunction pending appeal, ordering Defendants to immediately issue license plates reading "HOMO," "MF TUNDRA," and "MAFIA" to Mr. Saki, Mr. Wonser, and Mr. Corrigan, respectively.

Respectfully submitted,

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
Speech Law, LLC
4403 Saint Clair Ave, Suite 400
Cleveland, OH 44103-1125
216-912-2195 Phone/Fax
brian.bardwell@speech.law
*Attorney for Plaintiffs William Saki, Jeffrey Wonser, and Patrick Corrigan*

### CERTIFICATE OF SERVICE

I certify that on May 31, 2026, this document was served on opposing counsel as provided by Fed. R. Civ. P. 5(b)(2)(E).

*/s/Brian D. Bardwell*
Brian D. Bardwell (0098423)
*Attorney for Plaintiffs William Saki, Jeffrey Wonser, and Patrick Corrigan*