**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**


| | | |
|---|---|---|
| **WILLIAM SAKI, et al.,** | ) | |
| | ) | **CASE NO: 1:26-cv-1148** |
| **Plaintiffs,** | ) | |
| | ) | **Judge Dan Aaron Polster** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CHARLES L. NORMAN, et al.,** | ) | **ORDER** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |


Before the Court is William Saki, Jeffrey Wonser, and Patrick Corrigan's (collectively, "Plaintiffs") Emergency Motion for an Injunction Pending Appeal ("Motion"), filed on May 31, 2026. ECF 11. In the Motion, Plaintiffs raise a variety of concerns about the Court's May 29, 2026, Order, ECF 9, including the Court's decisions: (1) to treat the complaint in *Saki II* as a motion to enforce the consent order in *Saki I*; (2) to refrain from explicitly ruling on whether "HOMO" and "MAFIA" were permissible vanity plates under the *Zucco* Guidelines; and (3) to refrain from ruling on the constitutional questions presented in *Saki II*. The Motion requests that, pending Plaintiff's appeal of the Court's Order, this Court issue an injunction "ordering Defendants to immediately issue license plates reading 'HOMO,' 'MF TUNDRA,' and 'MAFIA' to Mr. Saki, Mr. Wonser, and Mr. Corrigan, respectively." ECF 11, at 4. The Court will address each of these issues, in turn.

For the below reasons, the Court hereby DENIES the Motion.

## I.  MOTION TO ENFORCE

Plaintiffs first take issue with the Court's decision to treat the *Saki II* Complaint as a motion to enforce the consent order in *Saki I*, rather than as a uniquely new set of claims. They argues that not only did the Court "not retain[] jurisdiction to enforce that settlement," but also that Wonser and Corrigan would not have had standing to enforce that order because they were not parties to *Saki I*. ECF 11, at 1.

It is true that the *Saki I* consent order did not explicitly grant the Court the jurisdiction to enforce the parties' agreement. But this is not the only way a district court retains the power to enforce a settlement agreement. When a court's order "incorporate[es] the terms of the settlement agreement in the order … a breach of the agreement would be a breach of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). The *Saki I* consent order plainly identifies the terms of the parties' agreement; that the parties themselves prepared the order is evidence that the inclusion of the terms of the agreement in the consent order was intentional. Accordingly, the Court clearly has the jurisdiction to enforce the *Saki I* consent order, especially where Saki is a party to both proceedings.[1]

As part of the Court's enforcement of the *Saki I* consent order, it ruled that Defendants must approve Wonser's application for a "MF TUNDRA" vanity plate. As stated at the May 29, 2026, Hearing, and again in the subsequent Order, the letters "MF" are not, in and of themselves, profane. Applying the *Zucco* Guidelines strictly, this requires Defendants to approve plates containing "MF," whether standing alone or in conjunction with other word(s) (assuming the other words do not otherwise violate the *Zucco* Guidelines).

---

[1] Because the Court has the ability to enforce the *Saki I* consent order here through Saki's party status in both cases, it need not address whether the other plaintiffs could have independently moved to enforce the consent order.

2

Regarding Saki's requested "HOMO" vanity plate, the Court left that decision to Defendants. As Saki concedes, "HOMO" has a history as a "pejorative term long used to marginalize gay men in America." ECF 1, ¶ 194. Saki is well within his rights to want to reclaim that term and "demonstrate[e] his pride in his identity." *Id.* And language can certainly evolve over time—words that were once pejorative, and thereby profane and obscene, may no longer be in 2026. But there is not an adequate record before the Court to make that determination in *Saki II*. Accordingly, the Court directed Defendants to strictly apply the *Zucco* Guidelines when reviewing Saki's application and determine whether today, in 2026 and not some time several decades ago, "HOMO" still has that same meaning or is no longer profane and/or obscene.

Likewise, the Court left it for Defendants to strictly apply the *Zucco* Guidelines to Corrigan's requested "MAFIA" vanity plate.

## II. *ZUCCO* GUIDELINES AND CONSTITUTIONAL QUESTIONS

As the Court observed during the May 29, 2026, Hearing, vanity license plates are not easily categorized as completely governmental nor completely private speech. Rather, they fall into a so-called "hybrid" zone, where the state's interest in public policy combined with the vanity plate creator's First Amendment rights warrant the exact sort of balancing standard that *Zucco* set forth twenty-five years ago. Although the Supreme Court has held that specialty license plate designs are government speech, it has not addressed whether the alphanumeric text displayed on vanity license plates constitutes government or private speech. *See Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 204 (2015) (noting that the opinion was only concerned with specialty license plate designs, and not with a personalization program allowing drivers to choose the alphanumeric text on their license plate (also known as a vanity plate)); *id.* at 208-14 (discussing, then finding, that specialty license plate designs are government speech). Lower courts

3

across the country are split on this question. *Compare, e.g.*, *Gilliam v. Gerregano*, No. M2022-00083-SC-R11-CV, 2025 WL 617603, at *12 (Tenn. Feb. 26, 2025) (applying a three-prong test to determine that alphanumeric text on a state's vanity plates constitutes government speech), *with, e.g.*, *Ogilvie v. Gordon*, No. 20-cv-01707-JST, 2020 WL 10963944, at *5 (N.D. Cal. July 8, 2020) (holding that alphanumeric text on a state's vanity plates constitutes private speech and the mere fact that the state regulates the issuance of plates is not enough to "transform their content into government speech"). The Sixth Circuit has yet to weigh in on this question.

As previously stated at the May 29, 2026, Hearing, the Court agrees that the State of Ohio has an interest in ensuring that the messages communicated on the vanity plates are not offensive or contrary to public policy. The presence of Ohio branding on vanity license plates implicitly tells the public that the state endorses (or at least approves) the plate's messaging because it must approve the plate—and therefore the message conveyed by the alphanumeric text—before issuance. *See Gilliam*, 2025 WL 617603, at *29; *Walker*, 576 U.S. at 212. Therefore, the fact that the government regulates vanity plates infuses a substantial element of government speech into the equation. However, as explained in *Ogilvie*, this element is not enough to transform the content of the vanity plates into government speech. *Ogilvie*, 2020 WL 10963944 at *5. The choice to get vanity plates is one made by the individual driver, not by the State. When people see others driving with vanity plates, they generally ascribe those messages to the individual driver, not to the State. *See id.* (finding the same). The alphanumeric text on vanity license plates is thus not purely government speech.

Because the alphanumeric text on vanity plates is not purely government speech, it is entitled to First Amendment protections. But this is not to say that the content on vanity plates is purely private speech, either. Nonetheless, a forum analysis is appropriate to determine the level

4

of scrutiny that should be placed upon the *Zucco* Guidelines. Most courts to take up the issue have held that license plates are a nonpublic forum. *See, e.g.*, *Hart v. Thomas*, 422 F.Supp.3d 1227, 1233 (E.D. Ky. 2019); *Mitchell v. Md. Motor Vehicle Admin.*, 450 Md. 282, 310 (2016); *Byrne v. Rutledge*, 623 F.3d 46, 54 (2d Cir. 2010). A government restriction on speech in a nonpublic forum will be upheld so long as it is reasonable and viewpoint neutral. *Cornelius v. NAACP Legal Def & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)); *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.*, 978 F.3d 481, 493-94 (6th Cir. 2020). This test grants a considerable amount of leeway to the government. Indeed, as the Sixth Circuit has observed:

> The government's reasons for imposing a restriction (its ultimate *ends*) need not be "compelling." *Cornelius*, 473 U.S. at 808. They need only be "permissible." *Minn. Voters Alliance v. Mansky*, 585 U.S. 1, 13 (2018). And a restriction need not be "narrowly tailored" (the least restrictive *means*) to achieve those ends. *Cornelius*, 473 U.S. at 809. The restriction need only offer a "sensible basis for distinguishing what may come in from what must stay out." *Mansky*, 585 U.S. at 16.

*Am. Freedom Def. Initiative*, 978 F.3d at 493-94 (emphasis in original) (cleaned up).

The *Zucco* Guidelines have survived for twenty-five years without any challenge.[2] It is facially reasonable and viewpoint-neutral for the State of Ohio to reject speech that is "profane … obscene, sexually explicit, or scatological[,]" is "so offensive" it could provoke violence, or advocates lawlessness. *See* ECF 1-56 (*Zucco* Guidelines). The State of Ohio has a legitimate government interest, as stated *supra*, in protecting its citizens from exposure to profane language and from endorsing offensive messaging. And the *Zucco* Guidelines do not facially endorse certain viewpoints at the expense of others. Therefore, the longstanding *Zucco* Guidelines survive First Amendment scrutiny and for twenty-five years have stuck the correct balance between the

---

[2] Neither party has pointed the Court to any such case, nor has the Court been able to find one on its own.

government interest in regulating vanity plates and the vanity plate creator's First Amendment rights. Plaintiffs do not assert any cogent reason to abandon guidelines that have worked without contest for a quarter of a century.

## III. INJUNCTION PENDING APPEAL

When considering whether to grant an injunction pending appeal, Courts generally consider four factors: (1) whether the applicants are likely to succeed on the merits of their appeal; (2) whether the applicants will be irreparably harmed absent the injunction; (3) whether the injunction will injure other parties; and (4) whether the public interest favors an injunction. *Boone Cnty. Republican Party Exec. Comm. v. Wallace*, 116 F.4th 586, 593 (6th Cir. 2024) (citing *A. Philip Randolph Inst. v. Husted*, 907 F.3d 913, 917 (6th Cir. 2019)). "[W]hen First Amendment rights are implicated, the factors for granting a preliminary injunction essentially collapse into a determination of whether restrictions on First Amendment rights are justified to protect competing constitutional rights." *Cnty. Sec. Agency v. Ohio Dep't of Com.*, 296 F.3d 477, 485 (6th Cir. 2002). But this emphasis on likelihood of success on the merits is not without its limits—"the movant is always required to demonstrate more than the mere 'possibility' of success on the merits." *A. Philip Randolph Inst.*, 907 F.3d at 919 (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

As discussed already, the *Zucco* Guidelines were adopted as part of a court-brokered settlement. Plaintiffs have not directed the Court to any challenge of the constitutionality of the *Zucco* Guidelines prior to *Saki I*. Assuming the *Zucco* Guidelines are applied strictly as they are written (something the Court addressed both in *Saki I* and in its Order in this case), they provide a clear basis for distinguishing what is and is not allowed on a vanity plate. And because they make no distinction based on the motivations or intended meaning of the applicant, the *Zucco* Guidelines

are viewpoint neutral. Plaintiffs are unlikely to succeed on the merits of their facial challenges to the *Zucco* Guidelines, and the Court has already addressed Plaintiffs' "as applied" challenges.

Even if Plaintiffs could demonstrate "serious questions going to the merits" of *Saki II*, the Court would still deny the Motion because they have failed to make the requisite showing of irreparable harm. *Mich. Coal. of Radioactive Material Users, Inc.*, 945 F.2d at 154 (quoting *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)). This is a very high bar. As the Supreme Court has made clear:

> [t]he key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) (emphasis added). Plaintiffs are correct that in <u>most</u> First Amendment cases, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." ECF 3, at 3 (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 825 (6th Cir. 2012)). But, as the Sixth Circuit has observed, "the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the" policy in question. *Id.* (quoting *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007)). And since the Court has found that Plaintiffs are unlikely to succeed on the merits of their constitutional challenges, this greatly reduces the risk of irreparable harm.

Further, while the *Zucco* Guidelines may prohibit applicants from displaying certain messages on vanity plates, there are still other ways for applicants to get their messages across. For example, nothing prohibits Plaintiffs from placing bumper or window stickers with identical messages on their cars, where the messages are unquestionably private speech. Even messages that

7

are clearly prohibited under the *Zucco* Guidelines are permissible when expressed via bumper stickers instead. This even further reduces the risk of irreparable harm.

## IV. CLARIFICATION

As a final matter, the Court clarifies what appears to be a misunderstanding about the timely implementation of the different parts of the Order. In their Motion, Plaintiffs assert that this Court "grant[ed] Defendants nearly a month to decide whether [the relevant plates are] allowed under *Zucco*." ECF 11, at 2. This is not correct. In the Order, the Court made clear that Defendants are to <u>immediately</u> cease using any standard other than a strict implementation of the *Zucco* Guidelines when reviewing vanity plate applications. The June 19, 2026, deadline referenced in the Motion is the deadline by which Defendants must update the Ohio BMV website and online application process with clear instructions for how to appeal a denial. If Plaintiffs were to apply today, for example, for their preferred vanity plates, Defendants are <u>required</u> to process those applications in accordance with their standard procedures using the *Zucco* Guidelines. As Defendants informed the Court at the May 29, 2026, Hearing, that applications are typically reviewed the next business day, this should allow for prompt consideration of Plaintiffs' applications well before Pride Month is over.

## V. CONCLUSION

For the forgoing reasons, the Court hereby **DENIES** Plaintiff's Motion.

**IT IS SO ORDERED.**

Dated: June 2, 2026

<u>s/ Dan Aaron Polster</u>
United States District Judge

8